## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

BERNADETTE S.

      Plaintiff,

v.                                      Civ. No. 24-124 JB/GJF

MICHELLE KING, *Acting Commissioner*
*of the Social Security Administration*,[1]

      Defendant.

### PROPOSED FINDINGS AND RECOMMENDED
### DISPOSITION ON PLAINTIFF'S MOTION TO REVERSE AND REMAND

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand [ECF 23] ("Motion"), dated November 11, 2024, challenging the determination of the Commissioner of the Social Security Administration ("the Commissioner") that Plaintiff is not entitled to disability insurance benefits or supplemental security income under Title II or Title XVI of the Social Security Act, respectively. The Motion is fully briefed. *See* ECFs 25; 28. The Court has thoroughly reviewed the administrative record, the parties' briefs, and the relevant law, and for the reasons set forth below, recommends that Plaintiff's Motion be **DENIED** and the case dismissed with prejudice.[2]

## I.    BACKGROUND

Plaintiff is 43 years old, completed high school in special education, and has previous work experience as an assistant manager and supervisor of overnight stockers. Administrative Record ("AR") at 33, 39, 116. Plaintiff filed applications for disability insurance benefits and supplemental

---

[1] Michelle King became Acting Commissioner of the Social Security Administration on January 20, 2025; thus, pursuant to Federal Rule of Civil Procedure 25(d), she is "automatically substituted as a party."

[2] The Court files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding judge's February 9, 2024 Order of Reference. ECF 8.

security income in September 2021. AR at 290–304. In those applications, Plaintiff alleged that she became disabled on February 26, 2021, due to post-traumatic stress disorder ("PTSD"), learning disability, anxiety, depression, and disrupted sleep patterns. AR at 116, 124, 290, 297, 326. Plaintiff's applications were denied at the initial level [AR at 116–31] and upon reconsideration [AR at 133–50]. She requested a hearing [AR at 212–13], which ALJ Monica Anderson conducted on June 8, 2023 [*see* AR at 28–85]. Plaintiff was represented by counsel and testified at the hearing, as did vocational expert Mary C. Elvir. AR at 48–85.

On July 17, 2023, the ALJ issued her decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. AR at 28–41. Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision [AR at 284–86], but the Council denied her request for review [AR at 1–8], which made the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Plaintiff then timely filed the Complaint in this case seeking review of the Commissioner's decision. ECF 1.

## II.  STANDARD OF REVIEW

### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate claims for benefits, the SSA uses a five-step sequential evaluation process. *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003) (citation omitted). The first four steps require the claimant to show that (1) "[s]he is not presently engaged in substantial gainful activity," (2) "[s]he has a medically severe impairment or combination of impairments," and either (3) the impairment is equivalent to a listed impairment

or (4) "the impairment or combination of impairments prevents [her] from performing [her] past work." *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant bears the burden at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan*, 399 F.3d at 1261; *Williams*, 844 F.2d at 755–51, 751 n.2. If the claimant reaches step five, however, the burden shifts to the Commissioner to show that the claimant retains sufficient capacity "to perform other work in the national economy in view of [her] age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

### B.  Substantial Evidence

Judicial review of the ALJ's five-step analysis and ultimate decision is both legal and factual. *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence."). If the ALJ applied the correct legal standards and supported her findings with substantial evidence, the Commissioner's decision stands. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

In determining whether the ALJ applied the correct legal standards, the Court evaluates whether the ALJ "followed the specific rules of law" required for "weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may reverse or remand if the ALJ failed to "apply correct legal standards" or "show . . . [she] has done so." *Hamlin*, 365 F.3d at 1214 (citations and quotations omitted).

The Commissioner's factual findings, on the other hand, are presumed conclusive unless "[un]supported by substantial evidence." 42 U.S.C. § 405(g). This standard requires "look[ing] to an existing administrative record and ask[ing] whether it contains 'sufficien[t] evidence' to support

the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (quotation and citation omitted). "It means—and means only— such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

Under this "substantial evidence" standard, a court cannot convert its meticulous review of the full record into "reweigh[ing of] the evidence nor substitut[ing] [the court's] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quotation omitted); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quotation omitted). Consequently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quotation and brackets omitted).

## III. PLAINTIFF'S CONTENTIONS

Plaintiff contends that remand is required for three reasons: (1) because the ALJ relied on flawed non-examining state agency psychological consultants' prior administrative findings [ECF 23 at 13–14; ECF 28 at 3–5]; (2) because the ALJ failed to account for moderate limitations assessed by non-examining state agency psychological consultants in her residual functional capacity ("RFC") determination [ECF 23 at 14–16; ECF 28 at 5–10]; and (3) because the ALJ improperly assessed the opinion of the psychological consultative examiner [ECF 23 at 16–24;

ECF 28 at 11–12].

## IV.  ALJ'S DECISION AND FINDINGS

### A.  Steps One Through Three

At step one of the sequential evaluation process, the ALJ found that Plaintiff "ha[d] not engaged in substantial gainful activity since February 26, 2021, the alleged onset date." AR at 31 (citing 20 C.F.R. §§ 404.1571, 416.971). At step two, she found that Plaintiff had the following severe impairments: "learning disorder, depressive disorder, schizoaffective disorder, anxiety, intermittent explosive disorder, PTSD, hypertension, and obesity." AR at 31 (citing 20 C.F.R. §§ 404.1571(c), 416.971(c)). The ALJ concluded at step three that none of these impairments, individually or collectively, matched the severity of the "listed impairments." AR at 31 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

### B.  Steps Four and Five

At step four, the ALJ found that Plaintiff's statements concerning the severity of her symptoms "[were] not entirely consistent with . . . the . . . evidence" in the record. AR at 34. The ALJ also discussed, among other things, the prior administrative findings of the non-examining psychological consultants. *See* AR at 38–39. After summarizing those findings, the ALJ indicated that she found them "essentially persuasive." AR at 39. She elaborated that they were "supported by a narrative of the evidence existing at the time . . . rendered and . . . generally consistent with subsequently received evidence which, . . . reflect[ed] reported improvement and no significant change in . . . [Plaintiff's] mental impairments after commencement of treatment." AR at 39. The ALJ went on to explain that "the minor alterations reflected in [her] finding of residual functional capacity [were] based on the claims [sic] testimony to the extent reasonably supported by the evidence and utilizing more vocationally-relevan[t] terminology in assessing [Plaintiff's]

functional limitations." AR at 39.

The ALJ also discussed the opinions of Eligio R. Padilla, Ph.D, who conducted a consultative examination at the request of Disability Determination Services. AR at 35–36. The ALJ summarized the results of the various tests Dr. Padilla performed as well as his observations and diagnostic impressions.  AR at 35. After relating Dr. Padilla's opinions, the ALJ indicated that she found them "only partially persuasive." AR at 36. Although she found the full scale IQ score that Dr. Padilla reported to be "generally persuasive," she found his assessments of "marked limitation" in various areas of functioning not persuasive. AR at 36. The ALJ offered this explanation as to her rejection of those marked limitations:

> They are not well supported by the one-time clinical observations of Dr. Padilla and reliance on a limited treating progress note. The other evidence, including the prior and subsequent follow-up visits with NP Sapit, which reflect sustained improvement of mood, sleep, and energy, are not found to be consistent with [Plaintiff's] history provided to Dr. Padilla or indicative of marked impairment in any area of mental functioning. While she testified that she is able to read at only a second grade level, this is not supported by the overall record including her ability to obtain a driver's license and her sustained employment history as an assistant manager. Further, [Plaintiff] testified that she would be given a list by the store manager of the things that needed to be done for the day. She indicated that she was not writing it down at first and would forget to do the task but then she additionally testified that her boss told her to write it down to which she did. [Plaintiff] also testified that she supervised 20 to 25 employees. Although job duties suggest otherwise, latitude is accorded to [Plaintiff]. The overall evidence is found to be more consistent with the mental limitations set forth in the [RFC] finding.

AR at 36.

Also at step four, the ALJ determined that Plaintiff had the RFC to perform a range of light work with the following limitations:

> She can perform work involving instructions that can be learned in 30 days or less with no more than 1 to 3 step tasks, either oral or written instructions, occasional changes to work setting, occasional work related decision making, avoidance of jobs that require use of a cash register or operation of a motor vehicle, no climbing of ladders, ropes, or scaffolds, avoidance of unprotected heights and hazardous machinery, only incidental interaction with the public an occ [sic] coworkers, and

no fast-paced production work such as assembly line type work.

AR at 17.

In light of her RFC findings, the ALJ determined that Plaintiff was unable to perform her past relevant work. AR at 39. Nevertheless, she found at step five that, given Plaintiff's "age, education, work experience, and [RFC], there [were] jobs that exist[ed] in significant numbers in the national economy" that Plaintiff could have performed, such as marker, router, and silver wrapper. AR at 40–41. Consequently, the ALJ found Plaintiff not disabled within the meaning of the Social Security Act. AR at 41.

## V.   DISCUSSION

### A.   The ALJ did not commit harmful error when assessing the prior administrative findings at step four of the sequential evaluation process.

Plaintiff alleges that the ALJ committed two harmful errors in her assessment of the prior administrative findings of Renate Wewerka, Ph.D.,[3] a non-examining state agency psychological consultant: (1) failing to resolve or acknowledge internal inconsistencies in the prior administrative findings; and (2) failing to account for Dr. Wewerka's assessed moderate limitations in the RFC. ECF 23 at 13–16.

Because Plaintiff applied for disability benefits after March 27, 2017, the ALJ was required to evaluate medical opinions in her case under the revised regulations found in 20 C.F.R. §§ 404.1520c and 416.920c. *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533 at *5 & n.8 (10th Cir. July 6, 2021). Medical opinions from non-examining state agency consultants, like

---

[3] Although Plaintiff focuses her argument on Dr. Wewerka's prior administrative findings [*see, e.g.,* ECF 23 at 10–16], the Court acknowledges that William Farrell, Ph.D, a state agency consultant who completed similar assessments at the reconsideration level, provided prior administrative findings that are similar in all material respects to those of Dr. Wewerka. *Compare* AR at 118–22, 126–27, *with* AR at 136–40, 145–49. Indeed, the ALJ considered Dr. Wewerka's and Dr. Farrell's findings collectively without distinction, finding both consultants' findings "essentially persuasive." *See* AR at 38–39. As such, the Court's analysis herein applies with equal force to the ALJ's consideration of Dr. Farrell's prior administrative findings.

Dr. Wewerka, are classified as "prior administrative findings[,]" but the rules for weighing them are the same as for weighing medical opinions. *See Vigil v. Saul*, No. CV 20-632 CG, 2021 WL 2117184, at *5 (D.N.M. May 25, 2021) (citing 20 C.F.R. §§ 404.1531a, 404.1520c; *see also* 20 C.F.R. §§ 416.913a, 416.920c. Under the revised regulations, no specific evidentiary weight or deference is given to prior administrative findings. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, they are evaluated on equal footing using the factors enumerated in the regulations. *See* 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). Of the enumerated factors, "supportability" and "consistency" are the "most important," and an ALJ must explain how she considered these factors when assessing the prior administrative findings' persuasive value. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). When an ALJ considers the persuasiveness of a medical source's opinions or findings, she must consider all relevant evidence in the case record, *see* 20 C.F.R. §§ 404.1520b, 416.920b, and must provide the Court with a "sufficient basis to determine that appropriate legal principles have been followed[,]" *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted). Here, Plaintiff argues that the ALJ failed to properly consider Dr. Wewerka's prior administrative findings in accordance with these regulations and principles. *See* ECF 23 at 20–24.

Non-examining state agency psychological consultants prepare their medical assessment forms in the electronic Claims Analysis Tool ("eCAT"). *See Carrillo v. Saul*, No. 1:19-CV-00292-KRS, 2020 WL 6136160, at *5 (D.N.M. Oct. 19, 2020). First, they complete the Psychiatric Review Technique ("PRT"). *See id*. The PRT is used at steps two and three of the initial-level sequential evaluation process to determine whether a medically determinable mental impairment is severe and, if so, whether it meets or medically equals a listed impairment. *See* Program Operation Manual System ("POMS") DI § 24583.005(A). Here, Dr. Wewerka examined the

Listing of Impairment's "Paragraph B" criteria for mental impairments at the initial level of review. AR at 118–19. As the ALJ noted, Dr. Wewerka determined that Plaintiff had a mild limitation in her ability to understand, remember, and apply information and in her ability to adapt or manage herself. AR at 38, 119. As to the areas of interacting or relating with others and maintaining concentration, persistence, and pace, Dr. Wewerka assessed moderate limitations in the PRT. AR at 38, 119.

At step four of the sequential evaluation process, state agency consultants use another eCAT form, the Mental Residual Functional Capacity assessment ("MRFC"), to assess a claimant's mental RFC. *See Young v. Berryhill*, No. CIV 16-1024 GJF, 2018 WL 840022, at *14 n.11 (D.N.M. Feb. 13, 2018); POMS DI § 24510.060(A)(1). While the "PRT has overall ratings for various categories, including maintaining concentration, persistence, or pace, the MRFC has more focused categories for use in determining RFC." *Lull v. Colvin*, 535 F. App'x 683, 686 (10th Cir. 2013). The MFRC form directs the consultant to first "record preliminary conclusions about the effect of the impairment(s) on each of four general areas of mental function" in a question-and-answer worksheet.[4] *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1159 (D.N.M. Aug. 25, 2016) (quoting POMS DI § 24510.061(A)). Next, the consultant is directed to "prepare a narrative statement of mental RFC." *Id*. If a consultant determines that a claimant has limitations in an area of functioning, she is instructed to describe the "degree and extent of the capacity or limitation" in "narrative format." *Id*. Finally, at the end of the MRFC form, there is a section entitled "MRFC –

---

[4] Previously, state agency consultants completed special form SSA-4734-F4-SUP, which was formally divided into Section I ("Summary Conclusions" containing checkboxes) and Section III ("Functional Capacity Assessment"). *Vienna v. Saul*, No. 2:18-cv-00783-LF, 2019 WL 4686718, at *4 n.8 (D.N.M. Sept. 26, 2019). Although MRFCAs completed through eCAT no longer include the same section labels, "parties and the courts have continued to refer to the checkbox portion of each MRFC as 'Section I,' and the 'narrative' portion(s) as 'Section III.'" *Id*. The Court refers herein to these separate sections of the MRFC as the "worksheet portion" and the "narrative portion."

Additional Explanation," which is reserved for "[a]ny other assessment information deemed appropriate."[5] *See* AR 121–22.

In the worksheet portion of the MRFC, Dr. Wewerka found Plaintiff moderately limited in the following areas of mental functioning:

- understanding and remembering detailed instructions;
- carrying out detailed instructions;
- maintaining attention and concentration for extended periods;
- working in coordination with or in proximity to others without being distracted by them;
- completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods;
- interacting appropriately with the general public;
- accepting instructions and responding appropriately to criticism from supervisors;
- getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and
- responding appropriately to changes in the work setting.

AR 121–22. In the portion of the MRFC form designated for a description of the degree and extent of these limitations, Dr. Wewerka wrote "see prtf." *See* AR 121–22. She expounded upon Plaintiff's functional capacity and limitations in the "Additional Explanation" section of the MRFC, where she opined that Plaintiff retained the capacity to:

> understand, remember and carry out at least simple instructions, make simple decisions, attend and concentrate for extended periods and respond appropriately to changes in a routine work setting; optimal performance may occur in an environment with incidental interpersonal interactions.

---

[5] The instructions printed on the MRFC form provide:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaption). Any other assessment information deemed appropriate may be recorded in the MRFC – Additional Explanation box.

*See, e.g.*, AR at 121.

AR at 122, 130.

In evaluating Dr. Wewerka's prior administrative findings, the ALJ recited the limitations Dr. Wewerka assessed under the "B" Criteria of the PRT as well as the mental RFC that Dr. Wewerka opined in the "Additional Explanation" portion of the MRFC. *See* AR at 38–39 (citing AR at 116–23, 133–41). But the ALJ did *not* discuss the moderate limitations Dr. Wewerka assessed in the worksheet portion of the MRFC. *Compare* AR at 38–39, *with* AR at 121–22. As a general matter, the ALJ found that the prior administrative findings were "supported by a narrative of the evidence existing at the time . . . rendered and [were] found to be generally consistent with subsequently received evidence which . . . reflects reported improvement and no significant change in . . . [Plaintiff's] mental impairments after commencement of treatment." AR at 39. The ALJ explained that "minor alterations reflected in" Plaintiff's RFC were based on Plaintiff's "testimony to the extent reasonably supported by the evidence and utilizing more vocationally-relevan[t] terminology in assessing [Plaintiff's] functional limitations." AR at 39. Ultimately, the ALJ determined that Dr. Wewerka's findings, and the identical findings of the state agency consultant on reconsideration, were "essentially persuasive." AR at 39.

### 1. The ALJ did not commit reversible error by relying upon flawed prior administrative findings without explanation.

Plaintiff argues that the ALJ's findings were not based on substantial evidence because the ALJ failed to "resolve[] or at least acknowledge the internal inconsistencies in the prior administrative findings." ECF 23 at 13 (citing AR at 36, 39). In this regard, Plaintiff insists that Dr. Wewerka "confused the steps of the [sequential evauluation] process." *Id*. That is, although the POMS directed her to describe Plaintiff's capacities or limitations in narrative form in each of the four broad categories of mental functioning, Plaintiff insists that Dr. Wewerka "haphazardly conflated different types of evaluations . . . used at different stages of the sequential evaluation

process" by merely referring to the "prft," or PRT form, in the narrative portion of the MRFC. *Id.* (quoting *Milner v. Berryhill*, No. CV 16-1050 GJF, 2018 WL 461095, at *12 (D.N.M. Jan. 18, 2018)). Plaintiff emphasizes that, although the forms have changed slightly over the years, adjudicators are still instructed to use the narrative sections of the MRFC to explain their assessment of the claimant's RFC. ECF 28 at 5.

In terms of conflicts, Plaintiff observes that in the narrative portion of the PRT Dr. Wewkera opined that Plaintiff retained the ability to perform "unskilled work," whereas she included *additional* limitations, including as to interpersonal interactions, in the "Additional Explanation" section of the MRFC. ECF 23 at 13–14 (citing AR at 119, 122). Moreover, Plaintiff contends that the "Additional Explanation" portion of Dr. Wewerka's MRFC form conflicts with the moderate findings she assessed in the worksheet portion of that same form. *Id.* at 14. For instance, although the worksheet portion noted a moderate limitation in Plaintiff's ability to maintain attention and concentration for extended periods, the MRFC "Additional Explanation" indicates that Plaintiff *can* "attend and concentrate for extended periods." *Id.* (citing AR at 121–22). Similarly, the worksheet portion includes a moderate limitation in Plaintiff's ability to respond appropriately to changes in the work setting, whereas the MRFC "Additional Explanation" suggests that Plaintiff can "respond appropriately to changes in a routine work setting." *Id.* (citing AR at 122). In addition to conflicts, Plaintiff describes omissions, suggesting that some of Dr. Wewerka's assessed moderate limitations (*e.g.,* in the ability to complete a normal workday and workweek[6]) were not addressed in the narrative portion of the MRFC or the narrative portion of the PRT. *Id.* (citing AR at 121). Given these alleged conflicts and omissions, Plaintiff maintains

---

[6] The Court's references herein to "the ability to complete a normal workday and workweek" are shorthand for "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."

that Dr. Wewerka's MRFC cannot constitute substantial evidence in support of the ALJ's RFC determination. *Id*.

The Commissioner insists that it was not reversible error for Dr. Wewerka to reference the "prtf" in each narrative section of the MRFC. ECF 25 at 12. As the Commissioner sees it, Dr. Wewerka was merely "directing attention to [the PRT], which included detailed discussion as to the medical evidence that supported [Dr. Wewerka's] findings." *Id*. The Commissioner insists that Dr. Wewerka did *not* conflate the PRT with the MRFC nor rely on "Listing findings" from the former to support RFC-related findings in the latter. *Id*. Moreover, the Commissioner emphasizes that Dr. Wewerka provided a "complete RFC narrative that outlined exactly what workplace restrictions [she] believed would account for Plaintiff's limitations," albeit in the "Additional Explanation" section of the MRFC rather than the narrative sections. ECF 25 at 12.

As to the implications of Dr. Wewerka's "prtf" reference, the Commissioner has the better argument. It is true that Dr. Wewerka's MRFC does not, in every technical sense, comply with the instructions found in the POMS or on the MRFC itself. Nevertheless, the Court is satisfied that any technical errors do not constitute harmful or reversible error. After all, Dr. Wewerka's "prtf" reference altered neither the limitations she assessed *nor* the mental RFC she set out in a separate section of the MRFC. Rather than referring to the PRT *findings*, which bear only upon step two (identifying severe impairments) and step three (rating severity for the Listings) of the sequential evaluation process, Dr. Wewerka's "prft" reference can reasonably be understood to point to evidence outlined in the PRT narrative that supports MRFC findings. Indeed, the ALJ herself appears to have understood Dr. Wewerka's "prft" references this way. AR at 39 (ALJ concluding that Dr. Wewerka's moderate limitations were "supported by a narrative of evidence existing at the time . . .").

Under these circumstances, the Court is satisfied that neither the placement of information within Dr. Wewerka's MRFC form nor her references to the "prft" were indicative of confusion regarding the significance of the findings within the respective assessment forms. And notably, Dr. Wewerka is not alone in her technical non-compliance with the MFRC instructions. Plaintiff hints at broader confusion among non-examining state agency psychological consultants: "This has caused confusion because the non-examining state agency psychological consultants are also using the MRFC—Additional Explanation section to write narratives[,]" rather than doing so within the section designated for explaining the MRFC limitations in narrative form. ECF 28 at 5.

To the extent Plaintiff relies on this Court's previous decision in *Milner* to support her argument that Dr. Wewerka's MRFC and her reference to the "prft" were "flawed" or "internally inconsistent," the Court notes three distinctions. First, in *Milner*, the psychological consultant erroneously set out his narrative RFC within *the PRT narrative section* and then failed to provide *any* narrative within the MRFC to explain her MRFC findings, other than the notation "see PRT." *Milner*, 2018 WL 461095, at *12. Here, in contrast, Dr. Wewerka set out the mental RFC within the proper assessment tool (*i.e.*, the MRFC), though she did so in the "Additional Explanation" section. *See* AR at 122. In other words, the consultant in *Milner* "conflated different types of evaluations," *see Milner*, 2018 WL 461095, at *12, whereas Dr. Wewerka simply cross-referenced the PRT while also providing a mental RFC in the evaluation tool designed for such purpose [*see* AR at 121–22]. Dr. Wewerka's non-compliance with MRFC instructions and the POMS was far less egregious.

Second, in *Milner*, the Court addressed the issue of the consultant's failure to comply with the POMS and MRFC instructions without the benefit of the parties' briefing. *Milner*, 2018 WL 461095 at *11 ("*Despite the parties' failure to brief this issue*, the Court finds that [the

psychological consultant's] opinion . . . was written in a manner that deviates so substantially from regulations and the [POMS] that [the consultants'] mental RFC assessment does not comprise substantial evidence in support of the ALJ's RFC assessment (emphasis added)). Here, the parties briefed the issue, and the Commissioner's argument on this point finds support in the ALJ's decision. That is, the ALJ implicitly recognized that Dr. Wewerka's "see prtf" notations were references to the evidence outlined in the PRT narrative, not to the PRT limitations. *See* AR at 39 (concluding that the narrative RFC set out in the MRFC was "supported by a narrative of evidence").

Third, the facts of this case, at least as they relate to Dr. Wewerka's MRFC findings, are much closer to those in *Padilla v. Berryhill*, No. 17-329 GJF, 2018 WL 3830930 (D.N.M. Aug. 13, 2018), a case decided some seven months after *Milner*. In *Padilla*, like here, the non-examining psychological consultant wrote "see PRTF" in each section of the MRFC designated for "[e]xplain[ing] in narrative form" the assessed limitations. 2018 WL 3830930, at *10. Also like here, the consultant in *Padilla* included a comprehensive mental RFC in the "Additional Explanation" portion of the MRFC form. *See id*. at *10. Acknowledging the consultant's references to the "PRTF" within the MRFC, this Court went on to determine that a restriction to simple work effectively incorporated the consultant's assessed moderate limitations, finding no reversible error. *Id*. at *14.

In sum, the Court does not perceive any non-compliance with the POMS or MRFC instructions approaching that of the psychological consultant in *Milner*. More importantly, any technical deviations from the prescribed instructions for completing the PRT and MRFC are not indicative of Dr. Wewerka's confusion as to the purpose of the respective assessment tools. Nor

does Dr. Wewerka's cross-reference to the PRT render suspect her MRFC findings. The Court recommends that Plaintiff's motion be denied on this ground.[7]

### 2. The ALJ did not err in accounting for Dr. Wewerka's assessed moderate limitations.

Next, Plaintiff argues that the ALJ erred by failing to account for two moderate limitations assessed by Dr. Wewerka in the MRFC: (1) a moderate limitation in her ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (2) a moderate limitation in her ability to accept instructions and respond appropriately to criticism from supervisors.[8] ECF 23 at 15; ECF 28 at 5–6.

For her part, the Commissioner maintains that the ALJ drafted an RFC that accounted for each limitation within Dr. Wewerka's narrative RFC, including with respect to memory, concentration, social interaction, and adaptation. ECF 25 at 13. As for the moderate limitations Dr.

---

[7] In her opening brief, Plaintiff argues that Dr. Wewerka's MRFC was "flawed" and "inconsistent" for an independent reason: because the mental RFC narrative that Dr. Wewerka set out in the "Additional Explanation" section of the MRFC "directly conflicts with some of her moderate findings without explanation." ECF 23 at 14. By way of example, Plaintiff points to alleged conflicts regarding her ability to maintain attention and concentration for extended periods and her ability to respond to changes in the work setting. *See id.* (citing AR at 121–22). In addition, Plaintiff asserts that Dr. Wewerka omitted an RFC limitation to account for the moderate limitation she assessed in Plaintiff's ability to complete a normal workday and workweek. *Id.* In response, the Commissioner cites case law from the Tenth Circuit and from this District, which in her view indicates that each of the moderate limitations about which Plaintiff complains may be accounted for with an RFC limitation to "simple work," which Dr. Wewerka included in her mental RFC. ECF 25 at 11–12 (citations omitted). In reply, Plaintiff appears to abandon her previous position, insisting that she "understands which moderate MRFC limitations are encapsulated by an RFC limitation to unskilled work in this circuit" and conceding that limitations other than the two on which she focuses "were accounted for" in the RFC. ECF 28 at 6, 8. Although Plaintiff persists in her argument that there was a failure to account for a moderate limitation in completing a normal workday and workweek, she does so in the context of her assertion that the *ALJ*, not the psychological consultant, failed to so account. *See id.* at 5–10. Accordingly, the Court will take up this argument in that context.

[8] In her reply brief, Plaintiff accuses the Commissioner of not closely reading her opening brief, given the Commissioner's discussion of additional moderate limitations which Plaintiff insists are not at issue (*e.g.,* maintaining attention and concentration for extended periods and responding to changes in the work setting). ECF 28 at 6–8. As discussed above, Plaintiff argued in her opening brief that these other moderate limitations were in conflict with Dr. Wewerka's mental RFC. *See* ECF 23 at 14. In any event, Plaintiff's reply brief effectively narrows the issues before the Court. ECF 28 at 8.

Wewerka assessed in the worksheet portion of the MRFC, the Commissioner insists that those are *not additional restrictions* but rather the *same limitations* that formed the basis for Dr. Wewerka's RFC, which limited Plaintiff to work involving only simple instructions, simple decisions, routine work settings, and reduced social interaction. *Id*. The Commissioner emphasizes that the Court's role is to compare the ALJ's RFC to the Dr. Wewerka's RFC narrative and not to Dr. Wewerka's assessed moderate limitations.  *Id*.  In support, the Commissioner quotes from the Tenth Circuit's decision in *Fannin v. Commissioner, SSA*, 857 F. App'x 445 (10th Cir. 2021): "Challenges to whether the ALJ's assessment of residual functional capacity incorporate limitations in Section I ask 'the wrong question . . . We compare the [ALJ's] finding to [a state agency reviewer's conclusions] on residual functional capacity, not [his] notations of moderate limitations." *Id*. at 14 (quoting *Fannin*, 857 F. App'x at 447–48).

As the Commissioner observes, the Tenth Circuit in *Fannin* determined that a narrative RFC for noncomplex work was consistent with a moderate limitation in the ability to complete a normal workday and workweek. *Id*. (citing *Fannin*, 857 F. App'x at 448). In this same vein, the Commissioner highlights this Court's decision in *Padilla*, in which the undersigned concluded that restricting a claimant to simple work and simple decision making reasonably accounted for a moderate limitation in completing a normal workday and workweek.[9] *Id*. at 11 (citing *Padilla*, 2018 WL 3830930 at *14–15).

Plaintiff acknowledges this Court's holding in *Padilla*—that, by limiting the plaintiff to simple work and simple decisions, the ALJ accounted for a moderate limitation in completing a

---

[9] More specifically, such a limitation was accounted for in *Padilla* by limiting the plaintiff to understanding, remembering and carrying out simple instructions, making commensurate work-related decisions, but not at a production pace, performing in a work setting with few changes while interacting occasionally with supervisors, coworkers and the public, and maintaining concentration, persistence, and pace for two hours at a time, with normal breaks. 2018 WL 3830930, at *3, 14–15.

workday and workweek. ECF 28 at 7–8. She attempts to draw a distinction, however. Because the ALJ in this case specified that Plaintiff was limited to "work involving instructions that can be learned in 30 days or less with no more than 1 to 3 step tasks," Plaintiff suggests that "it is unclear whether the ALJ even limited [Plaintiff] to simple work." *Id.* But the Court is not persuaded that the distinction Plaintiff attempts to draw is a meaningful one. Rather, the ALJ's RFC here provides more specificity as to *how simple* Plaintiff's work must be; it does *not* permit complex work. And notably, beyond limiting Plaintiff to simple work, the ALJ imposed additional limitations: to only occasional work-related decision making, occasional changes to work setting, and no fast-paced production work. *See* AR at 32. For the reasons discussed in *Padilla*, the Court is satisfied that the ALJ's RFC accounts for a moderate limitation in completing a workday and workweek.

To the extent Plaintiff argues that the ALJ erred by not adopting, verbatim, the portion of Dr. Wewerka's RFC narrative indicating that "optimal performance may occur in an environment with incidental interpersonal interactions," the Court is unconvinced. The Court agrees with the Commissioner that this final phrase of Dr. Wewerka's narrative RFC is somewhat vague and not phrased in vocationally relevant terms. And the ALJ herself explained that while she found Dr. Wewerka's prior administrative findings "essentially persuasive," she made "minor alterations" in Plaintiff's RFC to "utiliz[e] more vocationally-relevan[t] terminology in assessing [Plaintiff's] functional limitations." AR at 39. Whatever Dr. Wewerka's statement said about Plaintiff's "optimal performance," it was less clear what work she found Plaintiff still capable of performing given her social limitations. The ALJ, in contrast, determined that Plaintiff could tolerate "only incidental interactions with the public and occ[asionally] coworkers." AR at 32. Although Plaintiff complains that the ALJ failed to include limitations to account for Plaintiff's limited ability to deal with supervisors, the RFC reveals otherwise. By limiting Plaintiff to oral or written instructions

that could be learned in 30 days or less with no more than 1 to 3 step tasks, the ALJ reasonably accounted for Dr. Wewerka's assessed moderate limitation in accepting instructions and responding appropriately to criticism from supervisors. *See* AR at 32. Because the connections between the moderate social limitations assessed by Dr. Wewerka and the ALJ's corresponding RFC limitations are obvious, nothing more was required. *See Parker v. Comm'r, SSA*, 772 F. App'x 613, 616 (10th Cir. 2019) (reasoning that "[u]nless the connection (between the limitation and the work) is obvious . . . the agency must ordinarily explain how a work-related limitation accounts for mental limitations reflected in a medical opinion").

Notably, the Court's conclusions herein comport with the Tenth Circuit's holding in *Smith v. Colvin,* 821 F.3d 1264, 1269 (10th Cir. 2016). There, the Tenth Circuit held that a non-examining physician's RFC narrative, which limited the plaintiff to work "limited in complexity" and to "social interactions that were not frequent or prolonged," adequately accounted for assessed moderate limitations both in completing a normal workday and workweek and in accepting instructions and responding appropriately to criticism by supervisors. *Id*. at 1268–69. It followed, the court concluded, that the ALJ's RFC limiting the plaintiff to no face-to-face contact with the public and to only simple, repetitive, and routine tasks, likewise incorporated the same moderate limitations. *Id*.

In view of *Smith, Fannin,* and *Padilla*, and for the reasons discussed above, the ALJ's RFC adequately accounted for the moderate limitations that Dr. Wewerka assessed and incorporated in her own narrative RFC. Accordingly, the Court recommends that Plaintiff's motion be denied on this ground.

### B. The ALJ did not commit harmful error when assessing Dr. Padilla's opinions at step four.

Next, Plaintiff argues that the ALJ failed to properly support her analysis of the

persuasiveness of the opinions of Eligio R. Padilla, Ph.D, a psychological consultative examiner. ECF 23 at 16–24; ECF 28 at 11–12. The ALJ found Dr. Padilla's opinions "only partially persuasive" [AR at 36], but Plaintiff contends that had she found them persuasive, she would have assessed a more restrictive RFC and would have ultimately determined that Plaintiff was disabled. ECF 23 at 24. The Commissioner insists that the ALJ followed all applicable legal standards in assessing the persuasiveness of Dr. Padilla's opinions and that the record contains far more evidence than required to affirm under the applicable substantial evidence standard.  ECF 25 at 17–21.

As with the prior administrative findings, the revised regulations for evaluating medical evidence apply to the ALJ's assessment of Dr. Padilla's opinions. *See* AR at 17, 214; 20 C.F.R. §§ 404.1520c, 416.920c. Under these revised regulations, the ALJ must "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions," particularly by "explain[ing] how [she] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The ALJ's decision need only be sufficient to "allow a subsequent reviewer . . . to trace the path of [the ALJ's] reasoning." *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022).

### 1. The ALJ adequately articulated her supportability analysis.

As to supportability, the ALJ determined that the marked limitations assessed by Dr. Padilla were "not well supported by [his] one-time clinical observations . . . and [his] reliance on a limited treating progress note." AR at 36. Plaintiff contends that the "limited relationship" between herself and Dr. Padilla, given that she was examined by Dr. Padilla on only one occasion, is not itself a basis for rejecting a source's opinion. ECF 23 at 20–21 (citing *Gutierrez v. Saul*, No. CV20-0339 SCY, 2021 WL 1600034, at *5 (D.N.M. Apr. 23, 2021) (citing *Chapo v. Astrue*, 682

F.3d 1285, 1291 (10th Cir. 2012))). In response, the Commissioner suggests that the ALJ was *required* to discuss Dr. Padilla's relationship with Plaintiff. ECF 25 at 18 (citing 20 C.F.R. § 404.1520c(c)(2) and (3)). In reply, Plaintiff contends that the subsections of the regulation cited by the Commissioner are "irrelevant" and do not correspond to the supportability analysis. ECF 28 at 11.

While Plaintiff is correct that the subsections of the regulation the Commissioner cites are not the subsections dealing with supportability, the ALJ was still required to consider, and was not precluded from discussing, Dr. Padilla's relationship with Plaintiff, including its length, purpose, and extent and frequency of examinations. *See* 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3). That the ALJ made observations as to the limited nature of Dr. Padilla's relationship in the context of her supportability analysis was not error. The subsection of the regulations corresponding to the supportability analysis provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his . . . prior administrative medical finding(s), the more persuasive the . . . prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The fact that Dr. Padilla examined Plaintiff on only one occasion logically tempers the relevance and supportability of his opinions. And notably, the ALJ did not restrict her supportability analysis to a finding that Dr. Padilla's report was the product of a single exam; she also determined that Dr. Padilla's clinical observations and his reliance on limited treatment records did not sufficiently support his marked limitations. *See* AR at 36.

In so concluding, the ALJ explored whether Dr. Padilla's examination findings, or "clinical observations" as she referred to them, supported the marked limitations Dr. Padilla assessed (*i.e.*, in understanding and remembering complex, multistep instructions; in concentrating and persisting at tasks of basic work; in interacting with the general public, coworkers, and supervisors;

and in adapting to changes in the workplace). *See* AR at 35–36. The ALJ summarized Dr. Padilla's observations, noting that the results of his Mini Mental Status Exam ("MMSE") screening were "consistent with normal cognitive functioning"; revealed "grossly intact" recall, memory, and decision-making; and indicated a cooperative attitude. AR at 35; *see also* AR at 533–34. The ALJ acknowledged that Dr. Padilla's MMSE screening showed "very low" intelligence based on "fund of knowledge"; impaired attention and concentration and ability to abstract; "dysphoric" mood; and speech at a slow rate and low volume with normal fluency, articulation, and prosody. AR at 35; *see also* AR at 533–34. As to Dr. Padilla's Weschler Adult Intelligence Scale ("WAIS-IV") testing, the ALJ recounted Dr. Padilla's explanation that Plaintiff's cognitive ability could not easily be summarized because her nonverbal reasoning abilities were much better developed than her verbal reasoning abilities. AR at 35; *see also* AR at 535. The Court can follow the ALJ's reasoning as to why Dr. Padilla's "clinical observations" did not support his marked limitations and is satisfied that her supportability analysis comports with the applicable regulations.

Moreover, the ALJ offered an additional reason for finding Dr. Padilla's opinions "not well supported." She explained that Dr. Padilla's assessed marked limitations were not supported by his "reliance on a limited treating progress note." AR at 36. Among the materials Dr. Padilla reviewed were the following treatment notes: "SOAP Notes signed by Tracy Edwards, PMHNP, dated July 9, July 15, and August 27, 2021." AR at 531. Psychiatric nurse practitioner Edwards observed, on July 9, 2021, that Plaintiff reported difficulty sleeping and outbursts of anger because she had not refilled her medications [AR at 442] and then, on August 27, 2021, she reported that Plaintiff's sleep, anger, and hallucinations were improved on medications [AR at 440]. Insofar as the ALJ concluded that these records, together with Dr. Padilla's own "clinical observations," inadequately supported Dr. Padilla's assessed marked limitations, the Court considers such an

assessment reasonable and adequate. The Court can follow the ALJ's supportability analysis, and that analysis is supported by substantial evidence.

### 2. The ALJ adequately articulated her consistency analysis.

Plaintiff also takes issue with the ALJ's consistency analysis, arguing that the ALJ failed to discuss uncontroverted and significantly probative evidence and inadequately explained conflicts she perceived between Dr. Padilla's opinions and the other evidence of record. *See* ECF 23 at 22–23; ECF 28 at 11–12. The Commissioner, in contrast, maintains that none of the evidence that Plaintiff discusses implicates marked limitations in Plaintiff's functioning. ECF 25 at 19–20. More to the point, the Commissioner suggests that a reasonable factfinder could easily conclude that the clinical findings in the record were *inconsistent* with Dr. Padilla's "extreme" opinions. ECF 25 at 20. As the Commissioner sees it, Plaintiff invites the Court to reweigh the evidence, a role precluded by substantial evidence review. ECF 25 at 19–20 (*Alarid v. Colvin*, 590 F. App'x 789, 795 (10th Cir. 2014)).

The ALJ explained that she did not find "[t]he other evidence, including the prior and subsequent follow-up visits with NP Sapit, which reflect[ed] sustained improvement of mood, sleep and energy, . . . to be consistent with [Plaintiff's] history provided to Dr. Padilla or indicative of marked impairment in any area of mental functioning." AR at 36. The ALJ further concluded that Plaintiff's claim that she could only read at second-grade level was inconsistent with her ability to obtain a driver's license and to sustain employment as an assistant manager supervising 20 to 25 employees. AR at 36.  Similarly, the ALJ found Plaintiff's reading-level claim inconsistent with her testimony that a store manager provided her with a list of tasks or her testimony that she would write down the instructions that her boss gave her. AR at 36. According to the ALJ, the record evidence, on the whole, was "more consistent with the mental limitations set forth" in her

RFC than those opined by Dr. Padilla. AR at 36.

Plaintiff acknowledges that Nurse Practitioner Faith Sapit noted mental health improvement in her "newer treatment notes." ECF 23 at 22. In an attempt to demonstrate consistency between Dr. Padilla's opinions and NP Sapit's records, however, Plaintiff emphasizes that NP Sapit *also* reported slow speech and low volume and tone, difficulty in spontaneously initiating conversation, and below average intelligence. *Id*. (citing AR at 654). But notably, the ALJ explicitly recognized the mental status examination findings that Plaintiff highlights, just as she did the normal findings. *See* AR at 34–35. The ALJ simply found that – overall – NP Sapit's findings did not support the extreme limitations assessed by Dr. Padilla. AR at 36.

Plaintiff also observes that NP Sapit justified Plaintiff's level of mental health treatment by explaining that Plaintiff's mental health impairments caused "significant interference with interpersonal relationships," "maladaptive coping skills," and an inability to "alleviate symptoms independently." ECF 23 at 22 (citing AR at 655). Plaintiff suggests that, by omitting discussion of this notation by NP Sapit, the ALJ failed to address uncontroverted, significantly probative evidence upon which she did not rely. ECF 23 at 22–23. But the ALJ *did* discuss the February 3, 2023 "SOAP Note" to which Plaintiff refers. *See* AR at 37 (citing AR at 655). Although she did not specifically mention NP Sapit "justification" for Plaintiff's level of care (*i.e.*, her four prescription medications to treat mood stability, depression, and nightmares), she noted NP Sapit's reports at that same visit that the medication she was prescribed had resulted in *improved* sleep, energy, memory, and concentration as well as *stable* mood and that Plaintiff denied any "further concerns." *See* AR at 654–55 (emphasis added). Considering the context, the Court cannot say that the ALJ erred by failing to independently discuss NP Sapit's notation justifying medications that were improving Plaintiff's mental health symptoms.

The parties also quibble over the ALJ's conclusion that Plaintiff's reported reading level was inconsistent with other evidence in the record. In this regard, the ALJ found that Plaintiff's claim that she read at second-grade level was "not supported by the overall record including her ability to obtain a driver's license and her sustained employment history as an assistant manger[,]" when "she supervised 20 to 25 employees." AR at 36. This finding is relevant to the ALJ's assessment of Dr. Padilla's opinions because Dr. Padilla based his opinions in part on Plaintiff's "reportedly very low academic skills," and elsewhere in his report recounted Plaintiff's claim that "her reading skills are at about the second-grade level." AR at 532, 537. Plaintiff argues that in identifying this alleged inconsistency, the ALJ failed to explain how Plaintiff's driver's license or work history conflicts with her reported reading level or with Dr. Padilla's opinions. ECF 23 at 23; ECF 28 at 12. The Commissioner, on the other hand, insists that the evidence cited by the ALJ "plainly contradicts" Plaintiff's reading-level claims. ECF 25 at 20–21.

The Court is satisfied that the ALJ adequately discharged her duty to articulate her consistency finding as it relates to Plaintiff's reading level and to explain the reasons for that finding. Even if the ALJ could have perhaps delved deeper into how Plaintiff's driver's license and work history undermined her reports of second-grade reading skills, the explanation she offered was adequate under the circumstances, particularly because it was but one reason she offered for finding Dr. Padilla's opinions inconsistent with the record as a whole.

Plaintiff's arguments—both as to NP Sapit's treatment notes and as to Plaintiff's purported reading level—strike the Court as invitations to reweigh the evidence and to find Dr. Padilla's opinions more probative and more persuasive than did the ALJ. Constrained to its proper role, the Court is satisfied that the ALJ adequately and properly articulated her consistency analysis and the reasons therefor. Accordingly, the Court recommends that Plaintiff's motion be denied on this

final ground.

## VI.  CONCLUSION

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, Plaintiff's Motion to Reverse and Remand to Agency [ECF 23] be **DENIED**, and this case be **DISMISSED WITH PREJUDICE**.

_____

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.